IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHELIA FISSELLA,                )
                                )
            Plaintiff,          )
                                )
    v.                          )
                                ) Civil Action No. 10-1075
MICHAEL J. ASTRUE,              )
COMMISSIONER OF                 )
SOCIAL SECURITY,                )
                                )
            Defendant.          )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 19th day of September, 2011, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 14) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 11) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry

differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed her fourth application for SSI on March 14, 2007. That claim initially was denied due to plaintiff's failure to cooperate. Plaintiff filed a subsequent application on January 15, 2008, which was assigned a protective filing date of March 14, 2007. Plaintiff alleged she became disabled beginning March 2, 2006, due to a brain aneurysm, headaches and high blood pressure. At plaintiff's request, an ALJ held a hearing on July 30, 2009, at which plaintiff appeared represented by counsel. On August 27, 2009, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on June 15, 2010, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff was 42 years old when the ALJ issued his decision and is classified as a younger individual under the regulations. 20 C.F.R. §416.963(c). Plaintiff has a high school education and past relevant work experience as a cashier and a cleaner, but she has not engaged in substantial gainful activity at any time since she filed her SSI application.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that plaintiff suffers from the severe impairments of a history of cerebral aneurysm status post surgery, hypertension, obesity, major depressive disorder and borderline intellectual functioning, but those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ found that plaintiff retains the residual functional capacity to perform a range of light work with a sit/stand option and a number of other limitations. Plaintiff is limited to occasional postural maneuvers, but she cannot balance or climb ladders, ropes or scaffolds. In addition, plaintiff must avoid exposure to temperature extremes, wet or humid conditions and hazards. Further, plaintiff requires work in a low stress environment that does not involve a production line type of pace or independent decision making. Plaintiff also is limited to unskilled work that involves only routine and repetitive instructions and tasks, no more than occasional interaction with supervisors and co-workers, and no interaction with the general public (collectively, the "RFC Finding").

As a result of these limitations, the ALJ determined that plaintiff could not perform her past relevant work. However, based upon the vocational expert's testimony, the ALJ concluded

that plaintiff's age, educational background, work experience and residual functional capacity enable her to make a vocational adjustment to other work that exists in significant numbers in the national economy, such as an office helper, private mail clerk or sewing machine operator. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations that incorporate a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §416.920(a)(4). If the

claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff challenges the ALJ's findings at step 5 of the sequential evaluation process. At step 5, the Commissioner must show there are other jobs that exist in significant numbers in the national economy which the claimant can perform consistent with her age, education, past work experience and residual functional capacity. 20 C.F.R. §416.920(g)(1). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §416.945(a)(1); Fargnoli, 247 F.3d at 40. In assessing a claimant's residual functional capacity, the ALJ is required to consider her ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §416.945(a)(4).

Here, plaintiff argues that the ALJ erred at step 5 because: (1) he did not adequately explain why he rejected certain evidence; and (2) his hypothetical question to the vocational expert did not properly account for all of plaintiff's limitations. For reasons explained below, these arguments are without merit.

Plaintiff first asserts that the ALJ rejected certain findings made by Dr. Lindsey Groves, who performed a consultative psychological examination of plaintiff in March 2008. Dr. Groves stated in her written report detailing the results of her examination that plaintiff's mood was depressed, but she had fair

concentration ability, fair impulse control and no problems with social judgment and comprehension. (R. 216). Although plaintiff had low average intellectual ability and poor memory, she was able to engage in abstract thinking on simple concepts. (R. 216). Dr. Groves noted that plaintiff has never been hospitalized for psychiatric reasons, nor has she ever undergone psychiatric treatment. (R. 215). Dr. Groves rated plaintiff's Global Assessment of Functioning ("GAF") score at 60, (R. 216), which indicates only moderate symptoms or moderate difficulty in social or occupational functioning.[1]

Dr. Groves also completed a form entitled "Medical Source Statement of Ability To Do Work-Related Activities (Mental)." Dr. Groves indicated that plaintiff had only slight limitations in understanding, remembering and carrying out simple instructions, but she had marked limitations in making judgments on simple work-related decisions. (R. 212). Dr. Groves also found that plaintiff was not limited in her ability to interact with the public, she was only slightly limited in her ability to interact appropriately with supervisors, but she was markedly limited in

---

[1] The GAF scale, designed by the American Psychiatric Association, is used by clinicians to report an individual's overall level of mental functioning. The GAF scale considers psychological, social and occupational functioning on a hypothetical continuum of mental health to illness. The highest possible score is 100 and the lowest is 1. A score between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or any moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed. 2000).

her ability to interact appropriately with co-workers. (R. 212).

Plaintiff claims the ALJ did not adequately explain why he gave little weight to Dr. Groves' opinion that plaintiff has marked limitations in the areas of making judgments on simple work-related decisions and interacting appropriately with co-workers. To the contrary, the ALJ explained that Dr. Groves' assessment in those functional categories appears to have been based on plaintiff's subjective complaints, which the ALJ found were not entirely credible, as well as the fact that Dr. Groves' opinion was inconsistent with her own examination findings[2] and GAF score rating of 60. (R. 12, 15-16). The ALJ fully explained why he gave limited weight to certain aspects of Dr. Groves' assessment, and the court finds that his decision in that regard is supported by substantial evidence.

The court also notes that the Medical Source Statement form completed by Dr. Groves defines a "marked" limitation as one in which "[t]he ability to function is severely limited but not precluded." (R. 211). Thus, although Dr. Groves rated plaintiff as being markedly limited both in her ability to interact appropriately with co-workers and to make judgments on simple work-related decisions, she was not completely precluded from

---

[2]By way of example, Dr. Groves stated in her written report explaining her examination findings that plaintiff's "ability to get along with others is fair . . . ." and "[h]er interaction with people and authority is fair . . . ." (R. 217). Despite these findings, Dr. Groves inconsistently rated plaintiff as having marked limitations in her ability to interact appropriately with co-workers. (R. 212).

functioning in those areas. Nonetheless, the ALJ gave plaintiff "the maximum benefit of doubt" considering Dr. Groves' Medical Source Statement, (R. 16), and factored those functional limitations into the RFC Finding by restricting plaintiff to low stress work that does not involve independent decision making and no more than occasional interaction with co-workers and supervisors and no interaction with the general public.

In sum, the ALJ considered Dr. Groves' examination findings and assessment of plaintiff's functional capabilities and adequately explained why he gave certain aspects of her opinion little weight. Despite determining that Dr. Groves' opinion was entitled to little weight, the ALJ nevertheless accounted for Dr. Groves' findings in assessing plaintiff's residual functional capacity.

Plaintiff next claims the ALJ failed to adequately explain why he rejected the affidavit submitted by plaintiff's father, Harold Angel. Because Mr. Angel could not attend plaintiff's administrative hearing, he submitted an affidavit purporting to explain her alleged inappropriate behavior. (R. 190-93). The ALJ discussed Mr. Angel's affidavit in his decision and explained that it repeated many of plaintiff's subjective complaints, which the ALJ did not find credible. (R. 13). The ALJ also pointed out that Mr. Angel's affidavit describing plaintiff's behavior problems is inconsistent with her lack of mental health treatment and the absence of "treatment records objectively documenting these complaints on an ongoing basis. . . ." (R. 13). For these

reasons, the ALJ concluded that plaintiff's father was not entirely credible. (R. 14). The ALJ is empowered to evaluate a witness' credibility, see Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983), and the court concludes he properly did so in this case.

Plaintiff's final argument is that the ALJ's hypothetical question to the vocational expert did not account for all of the limitations caused by her impairments. An ALJ's hypothetical to a vocational expert must reflect all of the claimant's impairments and limitations supported by the medical evidence. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the ALJ's hypothetical incorporated all of plaintiff's functional limitations that the evidence of record supported, including all of the factors that were the basis of the RFC Finding. Accordingly, the ALJ did not err in relying on the vocational expert's testimony to conclude that plaintiff can perform work that exists in significant numbers in the national economy.[3]

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by

---

[3] Plaintiff also incorrectly suggests that the reasoning level of 2 associated with the office helper and sewing machine operator positions identified by the vocational expert in response to the ALJ's hypothetical are incompatible with plaintiff's residual functional capacity. The Third Circuit has held that a reasoning level of 2 is consistent with the ability to perform simple, routine, repetitive work. See Money v. Barnhart, 91 Fed. Appx. 210, 215 (3d Cir. 2004).

substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*(signature)*
Gustave Diamond
United States District Judge

cc: Robert B. Savoy, Esq.
Three Neshaminy Interplex
Suite 301
Trevose, PA 19053

Paul Kovac
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219